JOSEPH C. GILPIN, executor of WILLIAM CHANDLER, dec'd.,

*vs.*

PARTHENA CHANDLER, and JOHN C. MURRAY and HANNAH his wife.

*New Castle, Sept. T.* 1859.

A decedent having, in his lifetime. held certain securities which after his death were not found among his papers. a party alleging their destruction or cancellation by the decedent is bound to prove the fact to the satisfaction of the Court. The absence of the papers raises no presumption of such destruction or cancellation; nor is mere proof of an intention to destroy or cancel, or of the declaration of such intention, alone sufficient.

A decedent held in his lifetime certain securities, to the amount of $1000, given for property conveyed to the separate use of his wife. He was at the same time indebted to her for money loaned him out of her

separate estate, amounting, with interest, to about the like sum. After making his will, in order to satisfy her with its provisions, he had promised that the securities should not be enforced. The securities were not found among his papers after his death. *Held*, sufficient proof that he had voluntarily destroyed them.

BILL FOR THE RE-EXECUTION OF LOST SECURITIES. William Chandler, by deed dated August 18th, 1856, conveyed certain real estate to Hannah M. Jefferies, now Hannah M. Murray, one of the defendants, upon certain trusts for his wife, Parthena Chandler, for the consideration of $2000, expressed in the deed to be of the proper and separate funds of the wife. In part payment of the purchase money Hannah M. Jefferies, as the trustee, together with Parthena Chandler, executed and delivered to William Chandler five judgment bonds, bearing date the 18th of August 1856, each being for the payment of $200.00, and the several bonds being payable, with interest, in one, two, three, four and five years from date. The bonds were secured by a mortgage of the same date upon the purchased premises for $1000.00, executed by the trustee and Mrs. Chandler, payable in five annual installments, of $200.00 each, at the times fixed in the several bonds. William Chandler died on the 14th of October 1856, leaving a last will and testament, which contained sundry devises and bequests to Parthena Chandler, his widow, but making no reference to the before-mentioned mortgage and bonds.

This bill was filed by the complainant, as executor of William Chandler, alleging that the complainant, having learned that such mortgage and bonds had existed, had made diligent search for them among the papers of the testator, but without finding them; that he had also diligently inquired respecting them, and whether they had been paid; that the mortgage had not been recorded, nor judgment entered upon any of the bonds; that the complainant had reason to believe that no part of the debt secured by the said mortgage and bonds had been paid, and

that they had never been assigned or disposed of by the testator, but, as the complainant believed and alleged, had been lost, mislaid, or had, by some means unknown to the complainant, returned to the possession of Mrs. Chandler or of the trustee; that Mrs. Chandler, in a conversation with one James M. Williams, shortly after the testator's death, admitted her indebtedness for a portion of the purchase money of the property conveyed to her by the testator. The bill alleged that inasmuch as the mortgage and bonds were not yet due the complainant was without remedy at law, and prayed that the defendants should be decreed to execute and deliver to him a new mortgage, with new bonds, of the same tenor and effect with those originally executed and which had been lost.

The answers of the defendants admitted the execution of the mortgage and bonds under the circumstances and for the purpose set forth in the bill; and that nothing had been paid on them; but it denied that the papers had ever come to the possession of either of the defendants, or that they had any direct knowledge as to what disposal had been made of them by the testator. Mrs. Chandler alleged that the testator had, in his lifetime, promised to release her from all obligation on the mortgage and bonds, in consideration of her acquiescing in a devise to her by his will of certain real estate in bar of her dower, and that she had rested on that understanding. Hannah M. Murray, (who was a daughter of Mrs. Chandler,) by her answer also alleged that like promises had been made to her mother by the testator in her presence. The answers insisted, as the ground of defence, that the testator had, pursuant to his promise to Mrs. Chandler, destroyed the papers in question.

Depositions were taken on the part of the complainant, proving the original existence of the bonds and mortgage in question; that search for them had been made among

the papers of the testator without success; and that nothing with respect to them appeared of record; also, that on one occasion, since the testator's death, Mrs. Chandler had spoken of them to one James M. Williams, a witness, as existing obligations, according to the understanding of the witness. There was evidence on the part of the defendants that, at several times, Mrs. Chandler had expressed to the testator her dissatisfaction with his will; that he had endeavored to satisfy her by saying that these securities " should never come against her." One witness stated that, while the testator was on his death bed, Mrs. Chandler expressed to him her acquiescence in his will, stating as her reason that he had released her from this debt; and the witness understood him silently to assent.

The cause came before the Chancellor, at the Sept. T. 1859, for a hearing upon the bill, answer, exhibits and depositions.

*W. S. McCaulley* and *D. M. Bates* for the complainant.

It is objected to our claim to have these bonds and the mortgage replaced, that they were not originally effectual securities, Mrs. Chandler being a married woman. when she executed them, and Hannah M. Jefferies only a naked trustee. But, against Mrs. Chandler, though a married woman, the securities were good, as binding her separate estate; and as to Hannah M. Jefferies, she was a necessary party to the mortgage, having the legal title to the land mortgaged. The decree should be that Mrs. Chandler execute new. bonds, and the trustee a new mortgage. 2 *Kent. Com.* 163.

Again, it is objected that the mortgage, not being recorded, became no lien. This matters not. The mortgage, though not a lien, was evidence of debt. The omission to record it, however it may bear as evidence on the

question of Chandler's having destroyed it, affects not the complainant's right to have it replaced, if only lost. .

But the main objection is the alleged release. To this we answer that the proof is insufficient. All presumption in such a case is against a release. The *onus* is on the party setting one up; and such a defence is to be sustained by clear and unquestionable proof. The evidence relied on is of loose conversations, proved by biased witnesses, who are members of Mrs. Chandler's family : it shews at best only the efforts of the testator to pacify his wife's discontent at his will; and, as to what he did say in these conversations, the witnesses fail to agree, some representing him as saying he *had* released, and some that he *would* release. Against these impressions are the facts, that *after his will was made* Chandler took these securities and must then have intended their payment as not to be affected by his will; that, so far as proof goes, he never did in fact cancel or destroy them; that whatever promises he made to pacify his wife were without any consideration, since she still holds the check given by him for $500.00, and her promise to abide by his will was not binding; that his omission to record the mortgage is accounted for by his sickness and speedy death; and that Mrs. Chandler after his death admitted her indebtedness on it. Her answer, denying such admission, is evasive and unsatisfactory; and being, further, contrary to all the probabilities of the case, it is not sufficient, even against the one witness. The Court is not bound to believe the answer against the testimony of one witness, who is sustained by all the circumstances, and on that ground entitled to greater credit. 1 *Smith's Ch. Pr.* 272, *note* (6) *and cases cited.* ·

*T. F. Bayard,* for the defendants.

The securities claimed were void as to Mrs. Chandler,

then a married woman, in their inception. This is a sufficient answer. Further, the mortgage never became effectual for want of being recorded. But we have a defence upon the merits, viz: the release. The papers are not traced out of Mr. Chandler's possession. Both the defendants deny any knowledge of them, and there is no proof to the contrary. Whatever disposal, therefore, was made of them must have been by Chandler himself; and what that was the proof sufficiently explains. We have his promise, proved by several witnesses, made on different occasions, that these securities should not be enforced. The consideration was ample. Mrs. Chandler was not to claim a debt due from him of $500, amounting, with interest, to $960, almost the amount of the bonds. Besides this, she was to abide by the will, which she has done. It is a fair presumption, amounting to proof, connected with the non-production of the papers, that he had in good faith destroyed them; but, were it otherwise, the circumstances raise in favor of the widow a sufficient equitable defence to induce this Court to withold its aid for the restoration of the securities.

HARRINGTON, CHANCELLOR.—I need not decide anything with reference to the legal effect of these papers as securities; for, if they be merely lost, as is assumed by the bill, I can restore or reproduce them in the same condition they are proved to have been in, leaving it to the courts of law to decide what they are worth. But the point of this case is, whether they are lost merely, or whether they have been destroyed so as to annul them. Nothing short of that—not even proof of a declared purpose by William Chandler at some future time to annul them— will prevent a decree for their re-production, if he did not in fact annul them, though such an intention, or the declaration of it, may aid other proof of the fact of their destruction by him, so as to prevent their being operative

as securities to charge his widow. And, on this question, I agree that the party alleging such destruction is bound to make it out to the satisfaction of this Court; and he has the *onus,* unless the proof of the existence of the papers at the time of Wm. Chandler's death and of the manner they were then held by him necessarily connects itself with their existence as operative papers; and then it belongs to the general proof in the cause, as the complainant has to show the existence of operative securities at that period.

I do not think, therefore, though I at first inclined to give some force to it, that in this case there is much weight to be given to the question on which party the burden of proof lies. The question is, whether the complainant is entitled to a decree for the substitution of certain valid securities, alleged by him to have been such at his testator's death and to be now lost or mislaid?

The loss of these papers is proved, ineffectual search having been made for them at the proper place; and it is also proved that they at one time existed as valid securities. William Chandler sold property in Wilmington to his wife and conveyed it to a trustee for her, she paying from her own funds a part of the purchase money and executing these bonds, and also, with the trustee, the mortgage, as securities for the balance. But, it also appears in proof that the mortgage was not recorded; that it was designedly kept from record, which raises a doubt whether, at William Chandler's death, it was held by him as a security. To this is added, for the purpose of strengthening that doubt, proof that Mrs. Chandler, the obligor in these securities, had many years before they were executed, loaned her husband $500.00, of her separate money, and that she held his check for this sum uncollected; and that William Chandler, after having made his will and informed her of its contents, promised, in consideration

29

of this fact and in order to satisfy her with its provisions, that the mortgage should not be put on record nor enforced against her.   Several witnesses prove that William Chandler, at different times, told his wife that she should be satisfied by the provisions of his will and that these securities should not appear against her (that being the point on which she was dissatisfied;) and one unimpeached witness, Mrs. DeNormandie, proves a conversation between him and his wife, under very impressive circumstances, in which she said that she was now satisfied, giving as the reason that he had released her from this debt; to which statement he silently assented.   To this is to be added the fact that the papers have not been found since his death, and it is not imputed that the defendants have them.

On the other hand, there is evidence in the deposition of James M. Williams that Mrs. Chandler referred to these papers as existing obligations after the death of her husband.

In this conflict on a question of mere fact I must decide the case upon the conviction produced by the testimony on my own mind; and from this I believe that William Chandler, in his lifetime and shortly before his death, made way with these papers in fulfillment of his promise that they should not be a charge against his wife.   I believe that he held them from the first with an undetermined purpose as to using them; that the testamentary dispositions he made of his property, a just regard to the claims of his wife, and a disposition to satisfy her—all made it proper that neither the check which she held against him nor the bonds and mortgage he held against her should be enforced.   It is, therefore, reasonable and probable that he should have done what he is proved to have promised to do, to relieve her of the charge which was evidenced by these papers; and, under the circumstances, the natural and the easiest mode of doing that was by

destroying the papers themselves. I think I am fully justi-
fied in deciding the case on that ground, by his acqui-
escence in the declaration of his wife, made in his presence
just before his death and assented to by him, that he had
released her from this obligation.

Decree dismissing the bill, with costs.